IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED
MAR 3 0 2022
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | 4:22CR175 HEA/DDN |
| BRIAN KOWERT, SR., ) | |
| Defendant. ) | |

## INDICTMENT
## COUNTS ONE THROUGH FIVE
## WIRE FRAUD

**THE GRAND JURY CHARGES:**

A. INTRODUCTION

At all times relevant to the Indictment:

1. The defendant, **BRIAN KOWERT, SR.** (hereinafter referred to as "**KOWERT**"), was an owner and Chief Operating Officer of HBD Construction, Inc., a general contracting, construction management and development company in St. Louis, Missouri. HBD Construction, Inc. merged with Russell during 2020, and continued to operate as RussellHBD. (Both HBD Construction, Inc. and RussellHBD are hereinafter referred to as "HBD"). **KOWERT** served as the Project Manager on numerous HBD construction projects, and was responsible for the hiring of subcontractors on those various projects, including Minority Business Enterprise (hereinafter referred to as "MBE") companies.

2. The City of St. Louis, Missouri and the State of Missouri established participation goals and requirements for the hiring of qualified MBE contractors and subcontractors on contracts which involved city or state funding and/or tax subsidies. These MBE requirements sought to

1

address historical social and economic disadvantages experienced by minority group members to reduce minority-based barriers to and foster participation by minority owned businesses in the City and State contract opportunities. Numerous private companies and organizations also established participation goals for the hiring of qualified MBE contractors and subcontractors.

3. Greater Goods, LLC (hereinafter referred to as "Greater Goods") was a company which sells and distributes various kitchen and home, fitness, and health and wellness products, donating a portion of the sales price of each item to various charitable organizations. During in or about 2017, Greater Goods determined to move its headquarters and offices from St. Louis County to a location in the City of St. Louis. Greater Goods contracted with HBD for the renovation and redevelopment of the building it purchased on Chouteau Avenue in the City of St. Louis, and **KOWERT** was the Project Manager on the redevelopment project.

4. RAGA was a full-service, vertically integrated real estate developer with its headquarters and offices located in Springfield, Missouri. During 2021, RAGA finalized plans for the development and construction of a senior citizen multifamily apartment building known as Logan Villas and located in Raytown, Missouri. During October, 2021, RAGA, through an affiliated entity Logan Villas, LP, contracted with HBD to serve as the general contractor for the construction of Logan Villas. **KOWERT** was the Project Manager for the construction project.

5. Quadrangle Housing Company (hereinafter referred to as "Quadrangle") was a property management company affiliated with Washington University in St. Louis. Quadrangle owned and maintained a number of residential properties for rent primarily throughout the area near Washington University's main Danforth campus. During November, 2014, Quadrangle contracted with HBD for the renovation and redevelopment of apartment buildings on Kingsbury and Washington Avenues in University City, Missouri. On behalf of HBD, **KOWERT** signed

2

the contract with Quadrangle, and also served as the Project Manager on the renovation and redevelopment project.

B.  SCHEME TO DEFRAUD

6.  Beginning during in or about November, 2014, and continuing through in or about January, 2022 in the Eastern District of Missouri and elsewhere, defendant,

**BRIAN KOWERT, SR.,**

devised, intended to devise, and knowingly participated in a scheme to defraud and obtain money from companies engaged in development, redevelopment, and construction projects, and local, state and federal government agencies which provided construction funding and tax subsidies, by means of materially false and fraudulent pretenses, representations, and promises.

**QUADRANGLE PROJECT**

7.  Pursuant to its 2014 contract with HBD, Quadrangle required HBD to strive to achieve a minimum 20% MBE participation in the renovation and redevelopment project, and to provide periodic reports detailing the MBE participation to Quadrangle.

8.  **KOWERT**, on behalf of HBD and as project manager, entered into subcontracts and/or purchase orders with a number of non-MBE companies for the supply of materials on the Quadrangle project.

9.  It was a part of the scheme that, during in or about December, 2014, **KOWERT** reached an agreement with C.K., the owner of a certified MBE company, whereby C.K. agreed to have his MBE company identified and listed as having provided materials on the Quadrangle project in exchange for a $2,500 fee from HBD. The materials purported to have been provided by C.K.'s MBE company were actually the materials provided by a number of the non-MBE companies which had actual subcontracts and/or purchase orders with HBD. C.K.'s company

3

provided no materials on the Quadrangle project, and C.K. had no contact with the non-MBE companies which actually provided the materials on the project.

10. It was a further part of the scheme, and in order to conceal the scheme, that **KOWERT** directed HBD checks to be written to C.K.'s company for the materials provided by the non-MBE companies, and those checks were recorded in the books and records of HBD as having been issued to C.K.'s company. **KOWERT** then directed that the names of the non-MBE companies which had actually provided the materials be typed above C.K.'s company's name on those checks. **KOWERT** then had C.K. sign and endorse the backs of those checks and the checks were then distributed to the non-MBE companies for payment of their materials provided on the Quadrangle project. From January, 2015 through March, 2016, **KOWERT** directed approximately twenty-seven checks to be written to C.K.'s company and then distributed to the non-MBE companies in this manner, totaling approximately in excess of $340,000.00.

11. It was a further part of the scheme, that on or about September 30, 2015, **KOWERT** and HBD submitted a false report to Quadrangle, falsely identifying C.K.'s MBE company as having provided approximately $345,113 in materials on the project, when in fact, those materials had been provided by non-MBE companies. The materials which **KOWERT** and HBD falsely attributed to C.K.'s MBE company totaled approximately 63% of the total MBE labor and materials identified in that false report. Quadrangle and its employees had no knowledge of **KOWERT's** fraudulent scheme.

**GREATER GOODS PROJECT**

12. On or about July 18, 2017, the City of St. Louis enacted Ordinance number 70583, approving 10 years of Tax Abatement for the Greater Goods Chouteau Avenue redevelopment. The Ordinance required that the redevelopment project "...be bound by the conditions and

4

procedures regarding the utilization of MBE's...established by the City." The City required a minimum 25% participation by MBEs in the redevelopment project in order to be eligible for Tax Abatement, a fact known by **KOWERT** and HBD when it contracted, on or about August 9, 2018, with Greater Goods to redevelop the Chouteau Avenue building.

13. Construction on the Greater Goods redevelopment project began on or about October 1, 2018, and was completed on or about December 23, 2020. Among a number of other companies which supplied labor and materials on the redevelopment project, three non-MBE certified companies provided custom cabinets and appliances, doors, door frames and hardware, and steel railings and stairs. HBD entered into contracts and/or purchase orders with these three companies for their labor and supplies on the Greater Goods redevelopment project. None of these three companies was an MBE.

14. It was a part of the scheme that, during in or about April, 2020, **KOWERT** again reached an agreement with C.K., the owner of a certified MBE company, whereby C.K. agreed to have his MBE company identified and listed as having performed work and supplied materials on the Greater Goods redevelopment project in exchange for a fee from HBD. The work and materials purported to have been provided by C.K.'s MBE company was actually the work performed and materials provided by the three non-MBE companies.

15. As a further part of the scheme, and in order to conceal his scheme, on or about April 20, 2020, **KOWERT** issued duplicate HBD subcontracts to C.K.'s MBE company for the work performed and materials provided on the Greater Goods redevelopment project by two of the non-MBE companies. Further, **KOWERT** issued a duplicate HBD purchase order to C.K.'s MBE company for the materials provided on the Greater Goods redevelopment project by the third non-MBE company.

16. As a further part of the scheme, on or about June 22, 2020, **KOWERT** submitted a false chart of projected costs for the Greater Goods redevelopment project to the St. Louis Development Corporation, the City Agency charged with reviewing, approving and recommending Tax Abatements in the City of St. Louis. The chart falsely listed C.K.'s MBE company as providing labor and materials valued at approximately $198,000 on the redevelopment project. The chart falsely omitted the three non-MBE companies from the Greater Goods redevelopment project when, in fact, those companies provided the labor and materials falsely attributed by **KOWERT** to C.K.'s MBE company.

17. As a further part of the scheme, beginning on or about August 4, 2020, **KOWERT** caused HBD checks to be issued to C.K.'s MBE company for the value of work performed and materials provided by the three non-MBE companies on the Greater Goods redevelopment project. C.K. deposited those HBD checks into his MBE company bank account. As directed by **KOWERT**, C.K. then issued checks from his MBE company bank account to those three non-MBE companies for the work performed and materials provided by those companies on the Greater Goods redevelopment project. C.K. was paid approximately $2,000 by **KOWERT** and HBD for serving as a "pass through" and "exchanging" the checks. C.K. and his MBE company performed no actual work and provided no actual materials for the Greater Goods redevelopment project. C.K. and his MBE company had no actual contact with the three non-MBE companies on the Greater Goods redevelopment project. As a part of the scheme, **KOWERT** and C.K. "exchanged" approximately fourteen checks in the approximate amount of $220,000.

18. During this period of time, **KOWERT** was fully aware that St. Louis Development Corporation guidelines, incorporated in the City Ordinance allowing for the Greater Goods tax

6

abatement, required that an MBE company "perform a commercially useful function." **KOWERT** was fully aware that the guidelines provided that, "an MBE does not perform a commercially useful function if its role is limited to that of an extra participant in a transaction, contract, or project through which funds are passed in order to obtain the appearance of MBE participation." Thus, **KOWERT** was aware that his agreement with C.K. violated the City's published MBE guidelines.

19. As a further part of the scheme, between in or about May, 2021 and November, 2021, **KOWERT** and HBD caused a false application for Tax Abatement on behalf of Greater Goods for the Chouteau Avenue redevelopment project to be submitted to the City of St. Louis Development Corporation. The application falsely represented that C.K.'s MBE company had performed the work and provided the materials on the Greater Goods redevelopment project which was actually work performed and materials provided by the three non-MBE companies. **KOWERT** and HBD falsely attributed approximately $224,361.55 in project costs to C.K.'s MBE company, which comprised approximately 6 ½% of the required 25% MBE participation in the project. In the application, **KOWERT** and HBD falsely omitted the three non-MBE companies from the list of companies which had provided materials and performed work on the Greater Goods redevelopment project. Greater Goods and its employees had no knowledge of **KOWERT's** fraudulent scheme.

**LOGAN VILLAS PROJECT**

20. RAGA and its affiliate, Logan Villas LP, obtained funding for the Logan Villas development through the Missouri Housing Development Commission (hereinafter referred to as "MHDC"). As part of its MBE Initiative, on each project it funded, including Logan Villas, MHDC required minimum MBE participation of 10% of the actual physical costs of construction,

and 10% of the soft costs of the project, for such things as planning costs and fees for the architectural, legal and accounting portions of the project. MHDC also required compliance with Section 3 of the Housing and Urban Development Act of 1968, which required a general contractor and its subcontractors to provide employment to low-income persons on any construction projects. **KOWERT** and HBD were aware of these MHDC requirements on the Logan Villas project.

21. **KOWERT** and HBD began entering into subcontracts and purchase orders for labor and materials for the Logan Villas project during June, 2021. Among a number of other companies which were contracted with to supply labor or materials on the project, **KOWERT**, on behalf of HBD, entered into subcontracts or purchase orders with three non-MBE companies for kitchen cabinets and bathroom vanities, doors, frames, and door hardware, and appliances. None of these three companies was an MBE or a certified Section 3 company.

22. It was a part of the scheme that, during in or about October, 2021, **KOWERT** reached an agreement with C.R., the owner of a certified MBE and Section 3 company, whereby C.R. agreed to have his company identified and listed as a subcontractor to perform work and supply materials on the Logan Villas development project in exchange for a fee from HBD. The work and materials purported to be provided by C.R.'s company was actually the work to be performed and materials to be provided by the three non-MBE Section 3 companies.

23. As a further part of the scheme, and in order to conceal his scheme, on or about October 26, 2021, **KOWERT** caused subcontracts and purchase orders to be prepared, on the letterhead of C.R.'s company, between C.R.'s company and the three non-MBE Section 3 companies, for the work and materials to be provided on the Logan Villas project. These were, in essence, duplicates of the subcontracts and purchase orders those companies had previously executed directly with HBD.

24. As a further part of the scheme, on or about December 20, 2021, **KOWERT** submitted a "Contractor and Subcontractor Summary" to RAGA which falsely listed C.R.'s MBE/Section 3 company as providing labor and materials valued at approximately $333,858.28 on the redevelopment project. The chart falsely omitted the three non-MBE companies from the Logan Villas development project when, in fact, those companies were to provide the labor and materials falsely attributed by **KOWERT** to C.R.'s MBE/Section 3 company. RAGA then unwittingly submitted **KOWERT's** false "Contractor and Subcontractor Summary" to MHDC on or about January 4, 2022.

25. As a further part of the scheme, and in order to convince the three non-MBE companies to work on the Logan Villas project under the duplicate subcontracts and purchase orders with C.R.'s company, **KOWERT** advised representatives of those companies that HBD would ultimately be the company paying them, not C.R.'s company.

26. C.R. had no direct contact with any representatives of the three non-MBE companies. C.R. was not involved in the purchase of any materials for the Logan Villas project, and was not to be involved in providing any labor on the project. C.R.'s company was simply a "pass through" for the funds to be paid to those non-MBE companies in order for **KOWERT** and HBD to falsely inflate and represent that there was sufficient MBE and Section 3 participation in the Logan Villas project to meet MHDC requirements. RAGA and Logan Villas, LLP, and their employees, had no knowledge of **KOWERT's** fraudulent scheme.

C. THE WIRES

COUNT ONE

27. On or about June 22, 2020, within the Eastern District of Missouri and elsewhere, for the purpose of executing and attempting to execute the above-described scheme to defraud and

9

to obtain money and property by means of false and fraudulent pretenses and representations, the defendant did knowingly cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, and signals, including a false chart of projected costs for the Greater Goods redevelopment project sent by email via the internet to the St. Louis Development Corporation.

COUNT TWO

28. On or about May 17, 2021, within the Eastern District of Missouri and elsewhere, for the purpose of executing and attempting to execute the above-described scheme to defraud and to obtain money and property by means of false and fraudulent pretenses and representations, the defendant did knowingly cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, and signals, including false compliance documents in support of Greater Goods' application for Tax Abatement via the internet to the St. Louis Development Corporation.

COUNT THREE

29. On or about November 1, 2021, within the Eastern District of Missouri and elsewhere, for the purpose of executing and attempting to execute the above-described scheme to defraud and to obtain money and property by means of false and fraudulent pretenses and representations, the defendant did knowingly cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, and signals, including a duplicate purchase order between JB Distributing and C.R.'s company on the Logan Villas project, sent by email via the internet from HBD to JB Distributing.

## COUNT FOUR

30. On or about November 1, 2021, within the Eastern District of Missouri and elsewhere, for the purpose of executing and attempting to execute the above-described scheme to defraud and to obtain money and property by means of false and fraudulent pretenses and representations, the defendant did knowingly cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, and signals, including a duplicate subcontract between Metro Appliances and More and C.R.'s company sent by email via the internet from HBD to Metro Appliances and More.

## COUNT FIVE

31. On or about January 4, 2022, within the Eastern District of Missouri and elsewhere, for the purpose of executing and attempting to execute the above-described scheme to defraud and to obtain money and property by means of false and fraudulent pretenses and representations, the defendant did knowingly cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, and signals, including a false "Form 2502 Contractor and Subcontractor Summary" for the Logan Villas development which falsely listed C.R.'s company as providing labor and materials as an MBE and Section 3 subcontractor in the amount of approximately $333,858.28 sent by email via the internet from Baron Design and Associates to the Missouri Housing Development Commission.

All in violation of Title 18, United States Code, Sections 2, 1343, and 1349.

## FORFEITURE ALLEGATION

The Grand Jury further alleges there is probable cause that:

1. Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461, upon conviction of an offense in violation of Title 18, United States

Code, Section 1343 as set forth in Counts 1 through 5, the defendant shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to such violation.

2. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to such violation.

3. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;
    b. has been transferred or sold to, or deposited with, a third party;
    c. has been placed beyond the jurisdiction of the court;
    d. has been substantially diminished in value; or
    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____
FOREPERSON

SAYLER A. FLEMING
United States Attorney

_____
HAL GOLDSMITH, #32984(MO)
Assistant United States Attorney