UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No: 4:22-cr-00175-HEA |
| | ) |
| BRIAN KOWERT, | ) |
| | ) |
| Defendant. | ) |

**SENTENCING MEMORANDUM**

COMES NOW Defendant Brian Kowert, by and through undersigned counsel, and submits the following sentencing memorandum.

**Background**

On January 25, 2023, Defendant Kowert pled guilty to two counts of a five-count Indictment. Counts 1, 2 charged Wire Fraud, in violation of 18 U.S.C. § 1343. Presentence Report ("PSR") ¶ 1. The parties recommended that the base offense level is 7 pursuant to USSG §2B1.1(a)(1), of the 2021 Guidelines Manual. PSR ¶ 3. The parties further agreed that 10 levels are added because the intended loss was more than $150,000, but not more than $250,000, 2 levels are added because the offense resulted in a substantial financial hardship to one or more victim, and 2 levels are added because Kowert was an organizer, leader, manager, or supervisor in the charged offense. PSR ¶ 4. Per the written plea agreement, the government will recommend a two-level reduction for acceptance of responsibility for the offense, pursuant to USSG §3E1.1(a), and as the offense level is greater than 16, the offense level can be decreased by one additional level. PSR ¶ 5.

The PSR calculated the Total Offense Level as 18, in conformity with the plea agreement. PSR ¶ 43. Kowert had no criminal history, resulting in total criminal history score of zero and a

1

criminal history category of I.  PSR ¶ 48.  Based upon a total offense level of 18 and a criminal history category of I, the guideline imprisonment range is 27 months to 33 months.  PSR ¶ 76.  By statute, Kowert is eligible for a term of probation of not less than one year and not more than five years.  If probation is ordered, then either a fine, restitution,[1] or community service must be imposed as a condition of probation, unless extraordinary circumstances exist.  PSR ¶ 82.

Defendant Kowert respectfully suggests that this Court grant him a downward variance, and either sentence him to a term of probation or to a year and day in the Bureau of Prisons.  Such a sentence will best serve the statutory purposes of sentence.

**Kowert's History and Characteristics**

Kowert is nearly 72 years old, and a lifetime resident of St. Louis Missouri. PSR ¶ 51.  He was raised by his mother and father, both deceased, and his two siblings, one deceased.  His surviving sister also resides in St. Louis.  PSR ¶ 51.  Kowert has two children from his previous marriage, both of whom also reside in St. Louis.  Kowert was described as "devoted to his kids and grandkids."  PSR ¶ 52-53.  Kowert remarried in 1995 and resides with his wife in Des Peres. PSR ¶ 53.  They have resided in the same home for approximately 40 years.  PSR ¶ 54.

Kowert graduated from the University of Missouri in 1972 with a BA in Business and Public Administration.  PSR ¶ 60.  Early in his career, he obtained an MBA degree from St. Louis University.  PSR ¶ 61.  From 1972 to 1978, Kowert served as a member of the United States Army Reserves and received an honorable discharge.  PSR ¶ 68.  From 1973 to 2021, Kowert was employed at HBD construction.  PSR ¶ 65.  He retired in December 2021, shortly after his interview by the FBI regarding the instance offense.  *Id.*

---

[1] It is Kowert's intention to pay restitution at the time of sentencing.

Kowert's medical history includes blood clots in his lungs, for which he was prescribed blood thinners, as well as high cholesterol and melanoma. PSR ¶ 56. He reported weekly alcohol consumption and denied any use of controlled substances. PSR ¶ 58.

## The Nature of the Offense

Kowert pled guilty to two counts of Wire Fraud. PSR ¶ 1. As to Count 1, Kowert submitted via email a false chart of projected costs for the Greater Goods redevelopment project to the St. Louis Development Corporation, which falsely listed Charles Kirkwood's MBE as providing labor and materials for the project. In reality, other non-MBE companies were providing the goods and labor. PSR ¶ 21. As to Count 2, Kowert submitted a false application for Tax Abatement on behalf of Greater Goods to the SLDC. That application misrepresented that Charles Kirkwood's MBE had performed work and provided materials on the project, when in reality, the work had been performed and the materials provided by other, non-MBE companies. PSR ¶ 24. The loss amount attributed to Kowert is $224,361.55, which is the amount of the project costs that were falsely attributed to Kirkwood's MBE. PSR ¶ 25.

## Sentencing Rules

Title 18 U.S.C. § 3553(a) requires this Court to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing. There are four purposes of sentencing[2] and six factors to consider in connection with them[3]. The guidelines are only one factor to consider

---

[2] The purposes of sentencing are:
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.
18 U.S.C. §3553(a)(2)(A)-(D).

[3] The factors to consider in connection with the purposes of sentencing are:
    (A) the nature and circumstances of the offense and the history and characteristics of the defendant;

3

and deserve no greater weight than any other factor. *See Kimbrough v. United States*, 552 U.S. 85, 90 (2007). Thus, this Court may not presume a sentence within the guideline range as reasonable. *See Rita v. United States*, 551 U.S. 338, 351 (2007). Nor may it presume a sentence outside the guideline range unreasonable. *See Gall v. United States*, 552 U.S. 38, 51 (2007). Furthermore, this Court may not require "extraordinary circumstances" to justify a sentence below the guidelines nor "use a rigid mathematical formula to determin[e] the strength of the justification required for a specific sentence." *Id.* at 47. These rules apply regardless of whether the guideline derives from the Unites States Sentencing Commission ("the Commission") or a policy determination of Congress. *See Kimbrough*, 552 U.S. at 109-10.

### Kowert's conduct and the context of industry standards.

As described in the PSR, Kowert's conduct began by executing contracts and purchase orders with non-MBE companies. PSR ¶ 20. Then Charles Kirkwood's MBE would purport to have done the work and provide the materials under the guise of duplicate subcontracts. *Id.* Kowert would cause HBD to issue payment to Kirkwood's MBE for work done by other companies, and Kirkwood would deposit those checks plus an additional payment in his company's bank account and would then make payment to the non-MBE companies that actually performed the work or ordered the products. PSR ¶ 22. Kowert then caused a false application for tax abatement to be submitted, which falsely attributed project costs to Kirkwood's MBE. PSR ¶ 24.

---

(B) the kinds of sentences available;
(C) the guidelines promulgated by the Sentencing Commission;
(D) any pertinent policy statement issued by the Sentencing Commission;
(E) the need to avoid unwarranted sentencing disparities among similarly situated defendants; and
(F) the need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a)(1)-(7).

4

A review of information obtained from the St. Louis Development Corporation, SLDC, pursuant to a "sunshine" request demonstrates that it is common for MBE's to be subcontracted on to projects. Often, MBE contractors perform minimal labor, but appear to either order significant materials or subcontract to other firms, with the value of the materials or subcontractor work applied to the project's MBE percentage.

For example, during the construction of the Angard Arts Hotel, Blueboat International was identified as both a WBE (Women-owned Business Enterprise) and an MBE. Exhibit A Pg. 3, 11. However, Blueboat did not report any workforce, or labor, hours for the project. Exhibit A Pg. 19. Nonetheless, Blueboat's contract value for nonlabor hours was listed as part of the MBE participation. Exhibit A Pg. 46.

During the construction of a garage located within the Ballpark Village development at 601 Clark Avenue, Industrial JV was contracted to provide structural steel. Exhibit B Pg. 9. Simms – Industrial JV contracted to several subcontractors for framing, materials, and other aspects of the projects. Exhibit B Pg. 10. Simms – Industrial JV was identified as an MBE. Exhibit B Pg. 30. Simms – Industrial JV did not report workforce/labor hours for the project, although it appears that non-MBE subcontractors for Simms performed some labor. Exhibit B Pg. 36. Despite reporting no labor hours, much less any minority, women, or apprentice hours, for the project, the full contract price apportioned to Simms – Industrial JV was included in the MBE calculation for the project, which accounted for more than 7% of the MBE contribution. Exhibit B Pg. 66.

Finally, during the Block 400 project, part of the Ballpark Village development, TD4 LLC was listed as sub-sub-contractor and an MBE, with a scope of work to include "materials and labor." Exhibit C Pg. 10. TD4 did not report workforce/labor hours of any kind, although it

5

appears that non-MBE subcontractors operating under TD4 did. Exhibit C Pg. 40. Despite reporting no labor arms, TD4's contribution to the project was included as part of the MBE calculation, accounting for more than 3% of the project. Exhibit C Pg. 113.

There should be no question that Kowert's conduct was criminal. Kirkwood's MBE was brought on to take credit for work done and purchase orders made by other companies. However, the SLDC data demonstrates that if Kowert had directly contracted with Kirkwood to provide the same materials, Kirkwood could have ordered the materials and subcontracted the labor to other firms. This would have been consistent with other projects where MBE contractors provided no workforce hours of any kind.

**Kowert did not personally receive any renumeration for his criminal conduct and did not benefit from any of the loss amount.**

The PSR indicates that Kirkwood received a fee of approximately $2,000 "for serving as a 'pass through' and 'exchanging' the checks." PSR ¶ 23. There is no allegation that Kirkwood paid any portion of this fee to Kowert. Nor is there any allegation that Kowert received any such fee or kickback from any contractor, MBE or otherwise.

The loss amount in this case was computed based on the value of the projects that were falsely attributed to Kirkwood's MBE. PSR ¶ 78. There is no allegation that Kowert received any value or portion of that amount. The PSR also indicates that had the loss amount been calculated based on the tax abatement which Greater Goods did not receive, it would have been somewhat greater. *Id.* But again, there is no allegation that Kowert would have received any portion of the tax abatement or any other direct form of renumeration.

Finally, the PSR makes clear that the projects at issue in Counts 3 through 5, which will be dismissed pursuant to the plea agreement, did not result in any loss to the companies. PSR ¶ 77.

6

Again, there is no suggestion that Kowert would have received any renumeration directly from Kirkwood, SLDC, or the companies at issue resulting from falsely ascribing work done and materials purchased to Kirkwood's MBE.

**A below-guidelines sentence avoids disparities in sentencing.**

The guideline for a violation of 18 U.S.C. § 1343 is USSG §2B1.1, which covers theft and fraud. PSR ¶ 33. United States Sentencing Commission data establishes that, nationally, the sentences pronounced in cases in which this guideline is used are consistently low.

In 2021, more than 30% of offenders received non-prison sentences. 41.9% received a variance of some kind, and the vast majority of those (greater than nine out of ten offenders) received a downward variance. The average downward variance was a 59.6% reduction of the sentence. U.S. Sentencing Comm'n, "Quick Facts Fiscal Year 2021 – Theft, Property Destruction, and Fraud Offenses," available at *https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Theft_Property_Destruction_Fraud_FY21.pdf,* hereinafter "2021 Quick Facts".

In 2020, just over 25% of offenders received non-prison sentences. Just over 40% received a variance, and the vast majority of those (greater than nine out of ten offenders) received a downward variance. The average downward variance was a 58% reduction of the sentence. U.S. Sentencing Comm'n, "Quick Facts Fiscal Year 2020 – Theft, Property Destruction, and Fraud Offenses," available at *https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Theft_Property_Destruction_Fraud_FY20.pdf,* hereinafter "2020 Quick Facts".

In 2019, nearly 30% of offenders received non-prison sentences. 37.8% received a variance, and the vast majority of those (95.8%) received a downward variance. The average

7

downward variance was a 54.1% reduction of the sentence. U.S. Sentencing Comm'n, "Quick Facts Fiscal Year 2019 – Theft, Property Destruction, and Fraud Offenses," available at *https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Theft_Property_Destruction_Fraud_FY19.pdf,* hereinafter "2019 Quick Facts".

In 2018, more than 30% of offenders received non-prison sentences.  37.6% received a variance of some kind, and the vast majority of those (95%) received a downward variance.  The average downward variance was a 53% reduction of the sentence.  U.S. Sentencing Comm'n, "Quick Facts Fiscal Year 2018 – Theft, Property Destruction, and Fraud Offenses," available at *https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Theft_Property_Destruction_Fraud_FY21.pdf,* hereinafter "2018 Quick Facts".

Further, according to the United States Sentencing Commission Interactive Data Analyzer[4], individuals like Kowert routinely receive probation sentences.  In 2021, within the Eighth Circuit, a majority (57.7%) of offenders, over the age of 60 within Criminal History Category I, who have committed Fraud, Theft, and Property Destruction[5] crimes were sentenced to probation alone.

**Kowert poses a low risk of recidivism.**

United States Sentencing Commission data support the conclusion that Kowert poses a reduced risk of recidivism as compared with other offenders, which suggest that a sentence variance that minimizes any sentence of incarceration is appropriate in this case. *See e.g.,* U.S. Sentencing Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines,* pg. 16 (May 2004), *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-

---

[4] Available at https://ida.ussc.gov/analytics/saw.dll?Dashboard.
[5] The dashboard does not provide the ability to filter for those only convicted of fraud.

publications/2004/200405_Recidivism_Criminal_History.pdf (hereinafter "Measuring Recidivism"). The criminal history measure of the guidelines estimates the likelihood of recidivism based on two offender characteristics: prior convictions and prior terms of incarceration. *See* U.S.S.G. §4A1.1 The United States Sentencing Commission's 15-year report, however, concludes that the measure's predictive power would improve if it incorporated additional offender characteristics. *See Measuring Recidivism* at pg. 16.

Recidivism rates consistently decline as the defendant's age increases. *Id.* at 12, 28. Offenders between 21 and 25 years old recidivate at a rate of 31.9%. *Id.* at 28. In comparison, offenders with a criminal history category I over the age of 50 recidivate at the lowest rate, 6.2 %, of all cohorts. *Id.* As noted, Kowert is 72 years of age with no criminal history.

Marital status also correlates with recidivism rates. *See Measuring Recidivism* at 12, 29. Criminal history category I offenders who have legally married or are divorced recidivate at the same rate of 9.8%, while never married offenders do so at a rate of 22.7%. *Id.* at 29. As noted, Kowert has been married for nearly 30 years.

Educational attainment also correlates with lower recidivism rates. *See Measuring Recidivism* at 12, 29. Criminal history category I offenders who have not graduated from high school recidivate at a rate of 21.3%. *Id.* at 29. Those who have graduated from college recidivate at a rate of 7.1%. *Id.* As noted, Kowert has both a BA and a graduate degree.

Employment also corresponds to a reduced risk of recidivism. Criminal history category I defendants who were employed in the year prior to the instant offense recidivate at a rate of 12.7%, while those who were unemployed in the year prior to the instant offense recidivate at a rate of 20.6%. *Measuring Recidivism* at 29. As noted, Kowert was employed up through the period of the instant offense.

Criminal history category I offenders who engaged in illicit drug use in the year prior to the instant offense recidivate at a rate of 21.9%, while those who did not recidivate at a rate of 10.8%. *Id.* at 29.  As noted, Kowert has never engaged in illicit drug use.

Based on these metrics, Kowert represents a low risk of recidivism.

**The seriousness of the crime and the need for deterrence would be served by a sentence of probation, or in the alternative, a below-guidelines sentence of a year and a day.**

In light of the above, Kowert presents a relatively unique case.  Kowert's actions were criminal.  At the same time, the criminality was in lying about Kirkwood supplying materials and labor that other entities were actually supplying.  Had Kirkwood been properly contracted, Kirkwood could have entered into identical subcontracts and the result would have been consistent with industry practice.  Similarly, Greater Goods sustained a loss.  However, that loss was not to Kowert's benefit.  The behavior that should be deterred here is that Kowert took a shortcut, albeit an illegal one.

A downward variance to either probation or to a year and day is adequate to address that conduct.  It will signal that fraudulent shortcuts are criminal, at the same time that it acknowledges that a lack of pecuniary motivation can be a mitigating factor.  It will also signal that actors who would seek to enrich themselves leave themselves open to more substantial punishment.

At the same time, such a sentence would acknowledge that Kowert has no criminal history and a low risk of future recidivisms.  It will also acknowledge that commonly, similar crimes are not punished to the full extent of the guidelines, therefore avoiding an unnecessary disparity.

**Conclusion**

For the foregoing reasons, Defendant Brian Kowert respectfully suggests that a sentence of probation, or in the alternative, a below-guidelines sentence of a year and day, will best serve the statutory purposes of sentencing.

Respectfully submitted,

ROSENBLUM, SCHWARTZ & FRY, PC

By:

*/s/ Joel J Schwartz*
JOEL J SCHWARTZ, #39066MO
Attorney for Defendant
120 S. Central Avenue, Suite 130
Clayton, Missouri 63105
(314) 862-4332/Facsimile 862-8050
jschwartz@rsflawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2023, a true and accurate copy of the above and foregoing was served by means of the Court's electronic filing system upon Assistant United States Attorney Hal Goldsmith.